UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KAROLINE ILISE TYRAN,

                Plaintiff,

v.                                     **DECISION AND ORDER**
                                              16-CV-1012S

Commissioner of Social Security,

                Defendant.

1. Plaintiff Karoline Ilise Tyran challenges an Administrative Law Judge's ("ALJ") decision dated March 31, 2015, wherein the ALJ determined that she is not disabled within the meaning of the Social Security Act (the "Act"). Plaintiff now contends that this determination is not based upon substantial evidence, and remand is warranted.

2. Plaintiff protectively filed an application for supplemental security income on February 20, 2013, alleging a disability onset date of January 1, 2006. The claim was initially denied on June 11, 2011. Plaintiff thereafter requested a hearing before an ALJ and, on January 8, 2015, Plaintiff appeared and testified in Buffalo, NY. At the hearing, Plaintiff amended her disability onset date to February 20, 2013. The ALJ subsequently found, on March 31, 2015, that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff filed an administrative appeal and the Appeals Council denied Plaintiff's request for review on November 2, 2016, rendering the ALJ's determination the Commissioner's final decision. Plaintiff filed the instant action on December 19, 2016.

3. Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 13.) Judgment on the pleadings is appropriate where material facts are undisputed

1

and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other

words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work

experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. The ALJ made the following findings with regard to the five-step process set forth above:  (1) Plaintiff had not engaged in substantial gainful activity since February 20, 2013, the application date (R. 22)[1]; (2) Plaintiff had the following severe impairments: peripheral neuropathy and Raynaud's syndrome[2] (id.); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 23); (4) Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with certain exertional limitations[3] (R. 24); and (5) jobs exist in the national economy that Plaintiff is able to perform (R. 30).

10. Plaintiff challenges the decision, contending that the RFC determination is not supported by substantial evidence because rejection of certain medical opinions created a gap in the record that the ALJ was obligated to address.  This Court agrees.

11. The ALJ found that Plaintiff has an RFC for light work with certain additional exertional limitations, but did not apply any non-exertional limitations or otherwise discuss Plaintiff's non-severe impairment of cognitive disorder.  (R. 24.)  An RFC determination specifies the "most [a claimant] can still do despite [her] limitations," 20 C.F.R.

---

[1] Citations to the underlying administrative record are designated as "R."
[2] The ALJ also found the following non-severe impairments:  Hepatitis C, hypertension, low back pain, fibromyalgia, and cognitive disorder.  (R. 22-23.)
[3] The ALJ determined that Plaintiff had the RFC to perform a full range of light work, except that she can occasionally stoop, balance, kneel, crouch, and crawl; can occasionally climb ramps and/or stairs; can occasionally do overhead reaching; can never climb ladders, ropes, or scaffolds; cannot work in extreme cold environments; and requires a sit/stand option.  (R. 24.)

4

§ 404.1545, and is reserved for the commissioner, see 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2). However, "[a]n ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record. Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Lewis v. Comm'r of Soc. Sec., No. 6:00 CV 1225 GLS, 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005) (internal citations omitted).

Further, the ALJ is required to "develop a complete medical record before making a disability determination," Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512(d)-(f)), and "[w]hether the ALJ has met his duty to develop the record is a threshold question." Downes v. Colvin, No. 14-CV-7147 JLC, 2015 WL 4481088, at *9 (S.D.N.Y. July 22, 2015). Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." Scott v. Astrue, No. 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). "Even if the ALJ's decision might ultimately be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." Downes, 2015 WL 4481088 at *12.

Plaintiff filed her application for benefits on February 20, 2013, claiming a disability onset date of January 1, 2006, which she later amended to February 20, 2013. The administrative record contains several medical records that pre-date the amended onset date, including from Dr. Sandra Jensen, a consulting psychiatric examiner, and Dr. D.

Mangold, a consulting reviewer. Dr. Jensen conducted a psychiatric evaluation of Plaintiff on behalf of the state on July 8, 2010, and found that Plaintiff's attention, concentration and memory skills were mildly impaired due to limited intellectual functioning that was estimated to be in the borderline range, and that Plaintiff's fund of information appeared somewhat limited. (R. 234.) Dr. Jensen also found that Plaintiff had mild impairment maintaining attention and concentration, relating adequately with others, and appropriately dealing with stress caused by cognitive deficits. (R. 235.) Dr. Jensen diagnosed Plaintiff with cognitive disorder and alcohol dependence in early partial remission, and advised training and continued psych treatment. (R. 235-36.)

Dr. Mangold conducted a written psychiatric review of Plaintiff's records on behalf of the agency on August 26, 2010. (R. 241-58.) Dr. Mangold found that Plaintiff had moderate limitations in activities of daily living, maintaining concentration, persistence or pace, and maintaining social functioning. (R. 251, 241-258.) Dr. Mangold found Plaintiff had one or two episodes of de-compensation and noted her report of being severely depressed as well as her alcohol treatment and intent to harm herself. (R. 251, 253.) He concluded that Plaintiff was "mentally capable of performing simple, repetitive competitive [sic] work in a low contact setting." (R. 253.) Dr. Mangold also completed a mental RFC assessment where he found Plaintiff had moderate limitations in numerous areas, including understanding, memory, sustained concentration, persistence, social interaction, adaptation, ability to remember locations and work-like procedures, ability to work in coordination or proximity to others without being distracted by them, and ability to interact appropriately with the general public. (R. 255-57.)

Because these two opinions pre-dated the amended onset date by three years, the ALJ did not consider them in his decision, stating that the opinions of Drs. Jensen and Mangold were "given no weight." (R. 28.) An ALJ is generally only required to consider evidence dating one year before an application is filed. See 20 C.F.R. § 404.1512(d) (complete medical history includes the 12 months preceding the month in which application is filed); see also McManus v. Comm'r of Soc. Sec., 298 F. App'x 60, 61 (2d Cir. 2008) ("no error in the ALJ's decision to exclude additional evidence proffered by" plaintiff where the "evidence pre-dated the time period the ALJ was required to consider under 20 C.F.R. § 404.1512(d)"). However, Courts have found medical opinions that predate the alleged onset date are sometimes relevant, particularly where there is scant evidence from the disability period. See Binder v. Comm'r of Soc. Sec., No. 5:15-CV-738 (NAM), 2016 WL 4079533, at *4 (N.D.N.Y. July 29, 2016) (collecting cases).

Here, evidence of Plaintiff's mental impairments from the relevant period is minimal, but sufficient to suggest that her mental issues persisted after the alleged onset date. For example, non-exertional limitations are incorporated into an Undated Notice of Disapproved claim (R. 77-80), which noted that Plaintiff "has some trouble concentrating and remembering" and found that she could perform light work in which she "would not work directly with the public [or] closely with other people, and a job which would involve less stress than [her] past work." (R. 80.) They are also reflected in a Fibromyalgia RFC Questionnaire from treating nurse Melissa Fincher-Mergi, in which she notes that Plaintiff suffers from anxiety, panic attacks, and depression, that she is incapable of even "low stress" jobs, and that her attention and concentration would occasionally be insufficient to perform even simple work tasks. (R. 369-71.) Finally, Plaintiff testified that she

7

experienced "bad days" about twenty times a month in which she "just mop[ed]" and did not "do too much of anything" (R. 54) and reported that has problems paying attention and difficulty staying on track (R. 202).

In his discussion of the RFC, the ALJ gave no insight as to why he was disregarding the prior assessment that Plaintiff would be limited to work involving minimal engagement with the public or co-workers.  (R. 80.)  Indeed, at least one of the representative occupations suggested by the ALJ, cashier II (R. 30), would appear to require significant public interaction.  Perhaps this conflict is present because, having rejected the opinions of Drs. Jensen and Mangold, there was no medical opinion evidence regarding Plaintiff's mental RFC.  The opinion to which the ALJ gave the most weight is that of consulting examiner Dr. Honbiao Liu, but that opinion does not address Plaintiff's cognitive disorder or any associated non-exertional limitations.  (R. 347-50.)

"Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order."  Rosa, 168 F.3d at 83 (quoting Sobolewski v. Apfel, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)).  Although an ALJ's failure to develop additional medical source statements is not always grounds for remand, see Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33 (2d Cir. 2013), such a finding assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity.  See Sanchez v. Colvin, No. 13-CV-6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015).

Despite having been alerted by the pre-onset date opinions that Plaintiff suffered from psychiatric or mental limitations, and having determined that Plaintiff's cognitive disorder is an impairment (albeit a non-severe one), the medical evidence that the ALJ

8

states he relied on does not address Plaintiff's non-exertional symptoms or how they limited her functional capacities. "An ALJ is free to choose between properly submitted medical opinions, but cannot substitute his own expertise for that of a physician." Draggett v. Colvin, No. 12-CV-575S, 2013 WL 5488910, at *6 (W.D.N.Y. Sept. 30, 2013) (citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)). Given the ALJ's rejection of the medical opinions that preceded the alleged onset date, and the absence of medical opinion evidence in the record of Plaintiff's functional limitations arising from her mental impairments during the relevant period, the ALJ should have developed the record futher, and there is nothing in the record to indicate that he did so. See Hopper v. Comm'r of Soc. Sec., No. 7:06-CV-0038LEK/DRH, 2008 WL 724228, at *11 (N.D.N.Y. Mar. 17, 2008).

Because the ALJ failed to seek out medical opinions from Plaintiff's treating physicians or a consulting examiner, and because gaps in the record exist as to the functional limitations resulting from Plaintiff's cognitive disorder, remand for further proceedings is warranted. Sanchez, 2015 WL 736102 at *8 (remanding case of bipolar plaintiff where the "records lack[ed] the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature of [plaintiff]'s mental-health conditions and their impact on her RFC"); Downes, 2015 WL 4481088 at *15 (remanding "because the ALJ failed to seek out medical opinions from [plaintiff]'s treating physicians and because other gaps in the record exist as to the functional limitations resulting from" plaintiff's claimed disability); 20 C.F.R. § 404.1512(e) (recontacting medical providers may be necessary when the ALJ cannot make a disability determination based on the evidence of record).

9

12. In addition, Plaintiff argues that the exertional limitations set forth in the RFC are not supported by substantial evidence. The Commissioner is directed to consider these additional arguments on remand.

13. After carefully examining the record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's Motion for Judgment on the Pleadings is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED;

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: July 30, 2018
      Buffalo, New York

                                  /s/William M. Skretny
                                  WILLIAM M. SKRETNY
                                  United States District Judge